Cornelius Johnson sustained an injury while employed by Alabama Power Company. He subsequently filed a workmen's compensation complaint. Following oral proceedings, the trial court found the injury to be noncompensable. Johnson appeals.
The record reflects that at the time of the injury, Johnson was 29 years old and had been employed as a helper by Alabama Power for approximately five months. On August 11, 1991, Johnson was assisting with the opening and closing of some valves. He testified that while he was assisting with this task, his valve wrench slipped twice. He stated that when the wrench slipped, he felt a momentary pinch in the lower part of his back. He testified that he did not report the incident because he felt that it was only momentary. In his opinion, the August 11 incident was due to a stiffness in his back, which he had incurred earlier in his shift when he spent seven hours on his hands and knees cleaning up excess wax from floors. Johnson was not scheduled to work the next day.
Johnson returned to work on August 13, 1991. He was instructed to collect trash from the roof. When Johnson bent down to pick up a piece of trash, his back went out and he could not straighten up. His legs weakened, and he experienced pain in his lower back and legs. With the aid of a co-employee, Johnson was taken to the supervisor's office. Johnson filled out an employee injury report. Johnson explained his injury on the form in the following manner:
 "On 8/11/91, about 9:50 p.m., . . . I . . . was helping Joe Poole, and assisting Ervin Vincent open and shut some valves. The valve wrench kept slipping causing my body to thrust forward, causing a pinch in my back. The pinch came and went only to return on 8/13/91 about 3:45 p.m. on the roof while picking up paper."
Johnson was subsequently transported to the hospital. He was examined and told by a physician to stay off work for 72 hours. The pain was so severe that Johnson revisited the emergency room. He received treatment and was referred to Dr. Carter Harsh for further treatment.
After performing numerous tests, Dr. Harsh located the problem. He testified in deposition that the tests revealed "three levels of involvement with a herniated disk at L-3, 4 and at L-4, 5, and a central osteophyte at L-5, S-1." Dr. Harsh performed surgery on Johnson's back on September 3, 1991, at the L-3, 4 level. He opined that the obstruction at the L-5, S-1 level was of ancient origin. He believed that the injury to the other two levels could be attributed to the alleged injury. The latter was the area of the surgery.
Dr. Harsh testified that Johnson reached maximum medical improvement on February 4, 1992. He released him to return to work, with permanent restrictions of no repeated bending or heavy lifting or extended driving, particularly heavy equipment. Dr. Harsh gave Johnson a medical impairment rating of 8% to 10% to the body as a whole. He opined that 2% of the rating was attributable to the injury of ancient origin.
Johnson began working for Pemco Aeroplex on May 5, 1992. He had worked with Pemco prior to his employment with Alabama Power. He testified that during his previous employment with Pemco, he had been laid off a minimum of six times, ranging anywhere from 2 months to 23 months. The layoffs were due to Pemco's loss of military contracts.
At the time of the hearing, Johnson was earning approximately $624 a week. This *Page 41 
figure included fringe benefits. He testified that he had missed between four to six days of work at Pemco due to back pain. He was on leave without pay from August 19, 1992, through September 22, 1992. The leave was necessitated because he was instructed to get medical documentation of his permanent restrictions.
The parties stipulated that at the time of the accident, Alabama Power was paying Johnson approximately $549 per week. This figure included fringe benefits.
Dr. Robert Griffin, a vocational evaluator and counselor, testified that, in his opinion, Johnson suffered between an 8% to 10% loss of vocational potential. He based his decision on the permanent restrictions placed on Johnson. The fact that Johnson was earning more money at the time of the hearing did not affect Dr. Griffin's opinion because he found the Pemco employment to be unpredictable.
The trial court based its noncompensable determination on two premises. First, it determined that Johnson did not sustain an injury arising out of his employment and that no on-the-job injury occurred. Second, it determined that, assuming Johnson sustained an on-the-job injury arising out of his employment, the injury did not affect his earning ability.
In a workmen's compensation case, this court's review is limited to a determination of whether there is any legal evidence to support the trial court's conclusions. If a reasonable view of the evidence supports the findings of the trial court, this court may then determine whether the correct legal conclusions have been drawn therefrom. Ex parte EastwoodFoods, Inc., 575 So.2d 91 (Ala. 1991).
For an injury to be compensable under Alabama's workmen's compensation laws, the injury must be "caused by an accident arising out of and in the course of his employment." § 25-5-51, Code 1975. It is undisputed that Johnson's injury occurred in the course of his employment. We are only concerned as to whether the injury arose out of his employment.
In Ex parte Patterson, 561 So.2d 236 (Ala. 1990), the supreme court stated the following:
 "The phrase 'arising out of . . . employment' refers to the employment as being the source and cause of the accident. This Court has held that the rational mind must be able to causally connect the resulting injury to the employment. The claimant bears the burden of proving that his injury arose out of his employment."
(Citations omitted.)
In finding that the injury did not arise from Johnson's employment, the trial court based its determination primarily on the fact that Johnson's co-employee did not see Johnson exhibit any outward manifestation of pain when he was turning the valves on August 11, 1991. We see no relevance in this observation made by the trial court. Johnson testified that the August 11 incident caused only a momentary flash of pain and that it was not until August 13, while he was picking up trash, that his back pain became symptomatic. The fact remains undisputed that Johnson suffered a back injury on August 13, 1991, while he was picking up trash as instructed by his supervisor.
In buttressing its order, the trial court further found that "the Court is of the opinion, and Dr. Harsh found, that Plaintiff had a back problem, but concludes this was not a result of either turning a valve or picking up trash." This conclusion reached by the trial court is contradicted by one of its earlier findings, in which it stated that "according to Dr. Harsh, the more recent involvements could be attributed to the alleged injury by the Plaintiff."
Given the facts of this case, we hold that the trial court's judgment concerning the "arising out of employment" issue is not supported by the evidence. It appears to us that the only reasonable view of the evidence requires a finding that Johnson's injuries were the result of an accident that was causally connected to his employment. Ex parte Patterson.
For a permanent partial injury, the measure of workmen's compensation is loss of earning capacity. Code 1975, §25-5-57(a)(3)g; *Page 42 B.F. Goodrich Co. v. Martin, 47 Ala. App. 244, 253 So.2d 37
(Ala.Civ.App. 1971). If an employee's post-injury wages are the same or higher than his pre-injury wages, a presumption arises that no loss of earning capacity has occurred.Winn-Dixie of Montgomery, Inc. v. Nobles, 571 So.2d 1174
(Ala.Civ.App. 1990). The presumption may be rebutted by evidence which demonstrates incapacity or which explains why the higher wages are an unreliable basis for determining the employee's earning capacity. Winn Dixie.
In finding that Johnson did not suffer a loss in his earning capacity, the trial court made the following finding: "The Court finds that Plaintiff is now gainfully employed on a full-time basis with Pemco Aeroplex, Inc., and has been so since May 5, 1992, and that as a result of this employment, his post injury earnings are higher than when he allegedly was injured on the job."
Although there is a dispute surrounding the amount of Johnson's post-injury earnings, for our purposes, we accept Alabama Power's assertion and the trial court's finding, that Johnson's post-injury earnings were more than his pre-injury earnings. However, we find the evidence presented at trial rebuts the "no loss of earning capacity" presumption raised by Johnson's post-injury wages.
We find that Johnson's post-injury earnings are not a reliable basis for determining his earning capacity. This is because of the somewhat temporary and unpredictable character of his employment with Pemco. Jim Walter Resources, Inc. v.Hall, 516 So.2d 690 (Ala.Civ.App. 1987). The restrictions placed on Johnson also make future employment unpredictable. It is undisputed that Johnson has missed work at Pemco due to back pain.
The trial court's finding that Johnson did not sustain a loss in his earning capacity is reversed. The cause is remanded for the trial court to determine the extent of Johnson's loss of earning capacity.
Because we have remanded this case, we must touch on the notice issue. Concerning notice, the trial court simply stated: "The Court finds that prior to Plaintiff's alleged injury, he was instructed to immediately give notice to his supervisor, regardless of the degree of injury." We are uncertain as to the meaning of the trial court's finding.
Section 25-5-78, Code 1975, requires that written notice be given to an employer by an injured employee within 90 days of an accident in order to recover compensation. Written notice is not required if it is shown that an employer had actual notice of the injury. Ex parte Harris, 590 So.2d 285 (Ala. 1991).
It is undisputed that Johnson gave Alabama Power written and oral notification of his injury on August 13, 1991. Johnson's failure to give notice of the August 11, 1991, incident is of no relevance. Alabama Power had adequate notice of Johnson's injury.
Johnson suffered an injury which arose out of his employment, and his injury caused him to sustain a loss in his earning capacity. The trial court's judgment to the contrary is reversed and the case is remanded for further proceedings consistent with this opinion. There must be a determination of compensation due for temporary total disability, permanent partial loss of earning capacity, and medical costs.
The foregoing opinion was prepared by Retired Appellate Judge L. CHARLES WRIGHT while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Code 1975, and this opinion is hereby adopted as that of the court.
REVERSED AND REMANDED WITH INSTRUCTIONS.
All the Judges concur. *Page 43