THOMPSON, Judge.[1]
Ruth Lanthrip sued her employer, Wal-Mart Stores, Inc., seeking to recover workers’ compensation benefits for an on-the-job injury to her left foot. After conducting an ore tenus hearing, the trial court, on July 31, 2000, entered a judgment in which it, among other things, found that Lan-thrip had suffered no loss of earning capacity and determined that Lanthrip had suffered a 2% permanent partial disability to the body as a whole. Lanthrip filed a postjudgment motion; the trial court denied that motion. Lanthrip appealed.
The Workers’ Compensation Act, § 25-5-1 et seq., Ala. Code 1975, provides that this court may not reverse a trial court’s findings of fact if those findings are supported by substantial evidence. § 25-5-81(e)(2), Ala.Code 1975. “[Substantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989). Further, this court reviews the facts “in the light most favorable to the findings of the trial court.” Whitsett v. BAMSI, Inc., 652 So.2d 287, 290 (Ala.Civ.App.1994), overruled on other grounds, Ex parte Trinity Indus., Inc., 680 So.2d 262 (Ala.1996).
The trial court’s judgment sets forth the relevant facts of this case as follows:
“[Lanthrip] is a 42-year-old female who was injured on the job while working for Wal-Mart on September 19, 1997. She was treated initially by the Coosa Valley Baptist Emergency Room and then released. Although [Lanthrip] complains that her pain worsened throughout the year following the accident, she managed to work 35 hours a week as a bus driver for Talladega County and 20 hours a week as a security guard for Security Engineers, all in addition to working full-time at Wal-Mart. At every job, she was able to perform all of the duties she had prior to the injury except she was unable to patrol the lake on foot, but [Security Engineers] allowed her to patrol in her vehicle.
“Dr. Alan Sather diagnosed the Plaintiff with Morton’s neuroma on August *1081 19, 1998, and took her off work at Wal-Mart until October 17, 1998. [Lanthrip] ultimately did not return to work at Wal-Mart even though she was released to return to light duty on October 17[, 1998]. She continued to work 55 hours a week for her other two employers during this time, however. [Lanthrip] then chose Dr. Victoria Masear from a panel of four physicians; Dr. Masear performed surgery on her foot on November 20, 1998. Dr. Masear subsequently excused [Lanthrip] from all of her jobs until December 7, 1998, when she was allowed to return to work with a 100% sitting restriction. She immediately began working her other two jobs, but chose not to return to work at Wal-Mart until January 6, 1999. She began working for Wal-Mart as a switchboard operator and is currently employed full-time as a door greeter, both of which fall within her [work] restrictions.
“On May 13, 1999, Dr. Masear placed [Lanthrip] at maximum medical improvement and assigned a physical/medical impairment rating of 8% to the left foot, 6% to the left lower extremity, and 2% to the body as a whole. [Lanthrip] currently wears orthotics in her athletic shoes along with support stockings. She is able to drive her personal automobile without problems, but is unable to perform certain physical activities such as hiking and dirt biking. [Lan-thrip] manages her pain with over-the-counter pain medications.
“[Lanthrip] testified that she is able to perform her current job at Wal-Mart because it is within her restrictions. Although she appears to be a very hard worker, she was able to return to work there earning more money than she received prior to her injury, thus establishing the presumption that she suffered no loss of earning capacity. [Lanthrip] failed to present substantial evidence to rebut this presumption. This court finds that she has suffered no loss of earning capacity and awards permanent partial disability benefits based on her medical impairment rating alone.”
At the hearing on this matter, Lanthrip testified that she had recently stopped working for Security Engineers; she asserted that, because of her injury, she was unable to perform the requirements of that job. Lanthrip also testified that after her injury, she worked fewer hours at Wal-Mart than she had before her injury. However, Lanthrip testified that, because her hourly wage at Wal-Mart was higher after her injury than it was before the injury, her post-injury earnings at Wal-Mart were as much or more than her pre-injury earnings at Wal-Mart. In its judgment, the trial court determined that Lan-thrip had suffered a permanent partial disability, but it also determined that because Lanthrip had returned to work at Wal-Mart at a wage higher than her preinjury wage at Wal-Mart, it could not, pursuant to § 25 — 5—57(a)(3), Ala.Code 1975, consider evidence of vocational disability.
When an injured worker returns to work at a higher wage than he or she earned before his or her injury, the determination of any permanent partial disability benefits to which the worker is entitled is governed by § 25-5-57(a)(3)i., Ala.Code 1975. That section provides, in part:
“If, on or after the date of maximum medical improvement, ... an injured worker returns to work at a wage equal to or greater than the worker’s pre-injury wage, the worker’s permanent partial disability rating shall be equal to his or her physical impairment and the court shall not consider any evidence of vocational disability.”
*1082 In interpreting § 25-5-57(a)(3)i., this court has stated:
“Under the Workers’ Compensation Act, compensation due an employee for an injury to a nonscheduled member is governed by § 25-5-57(a)(3)g., Ala.Code 1975. According to that section, a permanent, partial disability is compensable according to the claimant’s loss of earning capacity.
“ ‘For a permanent partial injury, the measure of workmen’s compensation is loss of earning capacity. If an employee’s post-injury wages are the same or higher than his pre-injury wages, a presumption arises that no loss of earning capacity has occurred. The presumption may be rebutted by evidence which demonstrates incapacity or which explains why the higher wages are an unreliable basis for determining the employee’s earning capacity.’
“Johnson v. Alabama Power Co., 670 So.2d 39, 41-42 (Ala.Civ.App.1993) (citations omitted); see, e.g., Bolding v. Fluorocarbon Co., Reeves Rubber Div., 660 So.2d 1308, 1310 (Ala.Civ.App.1995) (holding that claimant’s loss of earning ability is the determining factor); and Smither v. International Paper Co., 540 So.2d 760, 762 (Ala.Civ.App.1989) (stating that the amount of compensation due an employee is governed by § 25-5-57(a)(3)g. and that loss of earning ability is the determining factor).”
Discovery Zone v. Waters, 753 So.2d 515, 517 (Ala.Civ.App.1999).
Thus, if the injured worker receives higher earnings after returning to work than the worker received before the injury, there is a presumption that the worker’s earning capacity is greater than his or her earning capacity before the injury. Marley Erectors, Inc. v. Rice, 585 So.2d 1379 (Ala.Civ.App.1991). That presumption may be rebutted by evidence of the worker’s inability to work or by evidence indicating that the worker’s postin-jury earnings are not a reliable indicator of the worker’s true earning capacity. In this case, the trial court specifically found that Lanthrip had failed to present evidence indicating that her postinjury earnings were an unreliable indicator of her earning capacity.
On appeal, Lanthrip argues that § 25-5-57(a)(3)i., Ala.Code 1975, required the trial court, in determining whether she had suffered a loss of earning capacity, to consider her wages from all sources of employment she maintained before and after her on-the-job injury. In her brief on appeal, Lanthrip contends that because she left her job with Security Engineers, her total postinjury earnings are now lower than her total preinjury earnings. However, as the trial court noted in its judgment, nothing in § 25-5-57(a)(3)i., Ala.Code 1975, requires that a trial court consider the earnings from employments other than the one in which the worker was injured in determining whether the worker suffered a loss of earning capacity.
Further, Lanthrip acknowledges that under another subsection of § 25-5-57, Ala.Code 1975, which governs the determination of her “average weekly earnings” for the purpose of calculating the amount of workers’ compensation benefits due, the trial court could consider only the wages Lanthrip earned from Wal-Mart. § 25-5-57(b), Ala.Code 1975. That section provides that “[a]verage weekly earnings shall be based on the wages, as defined in Section 25-5-l(6)[, Ala.Code 1975,] of the injured employee in the employment in which he or she was working at the time of the injury .... ” (Emphasis added.) Our supreme court rejected an argument that § 25-5-57(b) required that an injured worker’s wages from a second job be in- *1083 eluded in determining her average weekly wage for the purpose of calculating the workers’ compensation benefits for which her primary employer was liable. Ex parte Fryfogle, 742 So.2d 1258 (Ala.1999). The court concluded: “The plain meaning of the various pertinent provisions of the Workers’ Compensation Act is that the injured employee’s ‘average weekly wage’ is calculated by using the wages earned from the employer that directed the injured employee at the time of the injury.” Ex parte Fryfogle, 742 So.2d at 1261.
It would be inconsistent to conclude that wages from other employers may not be considered in calculating a worker’s average weekly earnings under § 25-5-57(b), Ala. Code 1975, but that those same wages from other employers may be used in determining whether the worker has suffered a loss of earning capacity under § 25-5-57(a)(3)i., Ala.Code 1975.
Subsections of a statute are to be construed in para materia in order to determine their meanings and intents. McCausland v. Tide-Mayflower Moving & Storage, 499 So.2d 1378 (Ala.1986).
In American Cast Iron Pipe Co. v. Uptain, 680 So.2d 378 (Ala.Civ.App.1996), overruled on other grounds, Ex parte Drummond Co., 837 So.2d 831 (Ala.2002), this court affirmed the trial court’s judgment, which was based on its consideration of evidence pertaining to the injured worker’s vocational disability. In that case, the injured worker returned to work at a higher hourly wage. The injured worker also operated a lawn-care business from which he earned more money than he could earn by working overtime for the employer. However, the injured worker presented evidence indicating that he was not physically capable of performing the work required for overtime with the employer, and that, because he could not work overtime, his average weekly earnings had declined. In affirming the trial court’s decision to consider vocational evidence, this court disregarded the income the injured worker received from his lawn-care business and determined that his postinjury earnings were lower than his preinjury earnings. American Cast Iron Pipe Co. v. Uptain, supra.
In Discovery Zone v. Waters, supra, during the course of his treatment for a back injury, the injured worker, Waters, lost his job with the employer. Waters then obtained employment at a higher salary with a different employer. This court concluded that because Waters’s postinju-ry earnings were higher than his preinjury earnings, he had suffered no loss of earning capacity. Discovery Zone v. Waters, supra. Lanthrip argues that this court should construe Discovery Zone v. Waters, 753 So.2d 515 (Ala.Civ.App.1999), as holding that earnings from all sources of employment should be included in determining whether a worker has suffered a loss of earning capacity. However, the facts of Discovery Zone v. Waters are distinguishable from the facts of this case. Also, nothing in the language of Discovery Zone v. Waters indicates that this court intended to provide such a broad construction of § 25-5-57(a)(3)i., Ala.Code 1975.
Nothing in the Workers’ Compensation Act or our caselaw provides or indicates that earnings from multiple employers should be considered in determining whether an injured worker has suffered a loss of earning capacity under § 25-5-57(a)(3)i., Ala.Code 1975. That subsection must be construed together with other provisions of the Workers’ Compensation Act, one of which provides that only the earnings derived from the employment in which the worker was injured are to be considered in determining a workers’ average weekly earnings. See § 25-5-57(b), Ala.Code 1975; Ex parte Fryfogle, supra. *1084 We conclude that the trial court correctly considered only Lanthrip’s earnings from Wal-Mart, the employer for whom she was working at the time of her on-the-job injury, in determining that Lanthrip had not suffered a loss of earning capacity. Therefore, we affirm.
AFFIRMED.
CRAWLEY and PITTMAN, JJ., concur.
MURDOCK, J., concurs in the result.
YATES, P.J., dissents.

. This case was originally assigned to another judge on this court. This case was reassigned to Judge Thompson on July 29, 2002.