Stacy Amos ("the employee") sued Liberty Trousers Division of Walls Industries, Inc. ("the employer"), for workers' compensation benefits. After a hearing the trial court entered a judgment awarding benefits, concluding that the employee had suffered a permanent and total disability. The employer appeals.
The standard of review this court must apply in this case is derived from § 25-5-81(e)(1), Ala. Code 1975, which provides: "In reviewing the standard of proof set forth herein and other legal issues, review by the Court of Civil Appeals shall be without a presumption of correctness." Furthermore, the Workers' Compensation Act provides that "[i]n reviewing pure findings of fact, the finding of the circuit court shall not be reversed if that finding is supported by substantial evidence." § 25-5-81(e)(2). The Alabama Supreme Court has defined "substantial evidence" as "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved."West v. Founders Life Assurance Co. of Florida, 547 So.2d 870,871 (Ala. 1989); Ex parte Trinity Industries, Inc., 680 So.2d 262,268 (Ala. 1996).
The employee, who was born on January 31, 1965, testified that she completed only *Page 1273 
the ninth grade and that she has not obtained a GED certificate. She began working for the employer in September 1987 as a sewing-machine operator. Her past work experience included working in other sewing plants; working in a bakery, icing and decorating cakes; working in a plant that manufactured items called "hoppity-hops"; working as a waitress; and working as a cashier.
In February 1994, the employee was "bundling"; this work involved picking up bundles of overalls, each bundle weighing approximately 30 to 40 pounds and containing 25 pairs of overalls, and placing the bundles by each worker's sewing machine and then moving the bundles to a shelf or bin when the worker finished sewing all of the overalls in the bundle. The employee testified that she noticed a pain in her left shoulder, which, she said, "got worse and went down [her] left arm." She reported the incident to her employer and sought medical treatment.
After a magnetic resonance imaging scan revealed that the employee had a large ruptured disc in her cervical spine, she was referred to Dr. Henry Ruiz, a neurosurgeon. On April 4, 1994, Dr. Ruiz performed a laminectomy on the employee's cervical spine. However, the pain radiating into the employee's left arm continued, and on September 6, 1994, Dr. Ruiz, once again, operated on the employee, removing the entire disc and fusing the employee's neck with a piece of bone from her hip. On January 13, 1995, a third surgery was required when it was discovered that the piece of bone from her hip had collapsed. Dr. Ruiz testified that he removed the collapsed bone and put in another bone graft from her hip, as well as a metal plate with screws.
The employee testified that she returned to work about June 1995 and that when she returned to work Dr. Ruiz imposed light-duty restrictions. In 1996, Dr. Ruiz imposed permanent restrictions — light duty for no more than 6 hours per day.
On appeal, the employer contends that because the employee has returned to gainful employment — working six hours a day, five days a week, in a productive capacity — she is only partially, as opposed to totally, disabled. In its order, the trial court stated:
 "Based upon the Court's findings of fact, the Court concludes that the [employee] has suffered a permanent total disability as that term is defined under the Alabama Workers' Compensation Act. In so doing, the Court acknowledges the long-standing precedent that permanent and total disability is the inability to perform an individual's vocation or obtain reasonably gainful employment. Trotman Elec. Co. v. O'Brien, 631 So.2d 1057 [(Ala.Civ.App. 1993)]; Blue Bell, Inc. v. Nichols, 479 So.2d 1264, 1268 (Ala.Civ.App. 1985). Under this standard, an employee is not required to be absolutely helpless or physically incapacitated, but must be unable to perform substantial gainful activity. Of important significance to the Court is the case of Keen v. Showell Farms, Inc., 668 So.2d 783 (Ala.Civ.App. 1995). In this decision, the Court of Civil Appeals has established criteria for determining if an employee is permanently and totally disabled, although their employer is allowing them to engage in sheltered work. The Court concludes that, like the Keen
plaintiff, [the employee in this present case], although performing some type of sheltered employment, is unable to [find] substantial gainful activity in the open and competitive labor market. This is evidenced by [the employee's] inability to perform services in quality, dependability, or quantity for a [reasonably] stable labor market."
Before her accident, the employee was one of those rare employees who attained a production level of 200%. She testified that, since the accident, she experiences constant pain in her neck and shoulders, with muscle spasms in her shoulders, and that she can operate her sewing machine *Page 1274 
for only 35 to 45 minutes before she finds it necessary to take a 10 to 15 minute break. She also testified that she finds it necessary to take medication every day- -even while at work. Tammy Partridge, the employee's former supervisor, testified that the employee's work is "excellent" and that the employee was the only person she supervised who was allowed to get up and take breaks on a consistent basis. Partridge also testified that on some occasions she has sent the employee home because she knew the employee would be unable to do a certain job because of her restrictions.
The employee testified that there are days when she physically cannot stay at work for six hours. The employer's absenteeism policy is that an employee is terminated from employment if he or she has 120 hours of absences in one year. At the time of the trial in August 1997, the employee had had 82.68 hours of absences.
In his deposition, Dr. Ruiz testified that the employee "has fallen into the category of failed cervical syndrome patients." Dr. Ruiz explained that "failed cervical syndrome" means "that after two repetitive operations, [the] pain never improved." Dr. Ruiz also testified:
 "I know that [the employee's] in pain and she's going to probably always be in pain. The pain that she's experiencing is due to muscle spasms which in turn are created by continuous straining. But this is not a pain due to compression to the nerves in the spine. As long as she's doing repetitive, frequent movements of the neck she's goingm. to strain it which in turn is going to create muscle spasms which in turn hurt. But with her condition I'm afraid that even sedentary type of activities that [are] normal life activities will also trigger the same amount of pain."
(Emphasis added.)
Dr. William Crunk, Jr., a vocational rehabilitation specialist, testified:
 "Well, we have a situation where a person is not, in terms of Labor Department definitions, substantially gainfully employed, meaning able to do 8 hours a day, 40 hours a week in [a] competitive labor market. She is working part-time. However, even at that [she] is having some difficulty. So first, I looked at what she was doing and found that it was what would generally be classified as sheltered types of employment; given a lot of flexibility when she works, how she works, and the number of hours she works apparently. Overall, if she's unable to continue in the sheltered area of work, then it was my opinion she wouldn't work. . . ."
Dr. Crunk further testified that if the employee were "to lose her job [with the employer, an employer] that supported, very accommodating, sheltered type of employment, then she would not be able to be employed anywhere else and . . . would have a 100% loss of earning capacity." Dr. Crunk also testified that in his opinion "[the employee] would have about a 90% current vocational disability or loss of employability," because although she is currently working, it is "on a limited basis, apparently at best 6 hours a day, at times she's not working quite that many hours, a lot of breaks, a lot of stopping of the work."
We find substantial evidence to support the trial court's finding that the employee "suffered a permanent total disability." This portion of the trial court's judgment is affirmed.
The employer also contends that the trial court's judgment is flawed because, it says, the court's calculations of the benefits due to employee do not follow the provisions of the Workers' Compensation Act. At trial, the parties stipulated that the employee reached maximum medical improvement as of May 23, 1995; that her average weekly wage was $272.19, plus benefits of $35.58; and that she currently makes $5.75 per hour. *Page 1275 
The trial court's September 11, 1998, judgment states that the employee is entitled to accrued benefits of $31,212.84 for 172 weeks (the period between May 23, 1995, and September 11, 1998). The employer argues that it is entitled to a setoff for the weeks the employee received a salary from the employer after she returned to work and for the disability payments the employer made to the employee.
Section 25-5-57(c)(3), Ala. Code 1975, provides: "If an employer continues the salary of an injured employee during the benefit period or pays similar compensation during the benefit period, the employer shall be allowed a setoff in weeks against the compensation owed under this article." Consequently, that portion of the trial court's judgment awarding accrued benefits of $31,212.84 for 172 weeks (the period between May 23, 1995, and September 11, 1998), is reversed. On remand, the trial court is to calculate the amount of setoff due the employer.
The trial court's judgment stated:
 "2. The [employee] shall have and recover of the [employer] the sum of $261.96 per week for compensation, payable each week from and after the execution of this judgment for so long as the [employee] is permanently totally disabled. This sum is equal to eighty-five percent (85%) of the [employee's] entitlement to weekly compensation on the basis of an average weekly wage of $307.77, which is inclusive of $35.58 per week for additional benefits. The remaining fifteen percent (15%) is awarded to [the employee's] attorney, as set out below in paragraph 3."
The employer argues that this award is far greater than the law allows because, it says, the employee is entitled to recover only 66 2/3% of her average weekly wage. The employee concedes that the compensation should have been calculated at 66 2/3% of her average weekly wage at the time of her injury. With regard to the attorney fees, the trial court should deduct the attorney fees from the total amount of the compensation awarded and should not "add-on" attorney fees to the amount of compensation awarded. Thus, that portion of the trial court's judgment dealing with the calculation of future benefits is reversed. On remand, the trial court is to recalculate the future benefits owed the employee.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
Robertson, P.J., and Yates and Crawley, JJ., concur.
Thompson, J., dissents.